985 A.2d 211 (2010)
411 N.J. Super. 236
J.T.'s TIRE SERVICE, INC. and Eileen Totorello, Plaintiffs-Appellants,
v.
UNITED RENTALS NORTH AMERICA, INC.,[1] Defendant-Respondent, and
Harold Hinkes, Defendant.
Docket No. A-2989-08T2.
Superior Court of New Jersey, Appellate Division.
Argued December 7, 2009.
Decided January 6, 2010.
*212 Elizabeth Zuckerman, Princeton, argued the cause for appellants (Zuckerman & Fisher, L.L.C., attorneys; Ms. Zuckerman, on the brief).
David I. Rosen, Newark, argued the cause for respondent (Littler Mendelson, P.C., attorneys; Mr. Rosen and Jacqueline K. Hall, on the brief).
Before Judges REISNER, YANNOTTI and CHAMBERS.
The opinion of the court was delivered by
REISNER, J.A.D.
Plaintiffs, J.T.'s Tire Service, Inc. (J.T.) and its sole owner Eileen Totorello, contend that a branch manager at United Rentals North America, Inc. (United) *213 tried to extort sexual favors from Totorello as a condition of allowing her company to continue doing business with United. Plaintiffs also allege that because she refused the manager's advances, United ceased contracting with J.T. We hold that plaintiffs' complaint states a cause of action for a discriminatory refusal to do business, under the Law Against Discrimination (LAD), N.J.S.A. 10:5-12(l). We therefore reverse the order granting United's motion to dismiss the complaint under Rule 4:6-2(e) and remand this case to the trial court.

I
Both sides agree that, for purposes of the motion and this appeal, the facts in the complaint must be regarded as true. United is a national equipment rental company. Totorello is the sole shareholder of J.T., a company that began selling commercial industrial tires to United's Piscataway, New Jersey branch in 1998. The complaint alleges that in 2005, Harold Hinkes,[2] United's Piscataway branch manager, began pressuring Totorello to have a sexual relationship with him. When Totorello refused Hinkes' sexual advances, Hinkes caused his branch of United to stop buying tires from her company. J.T. "managed to get the work back" when Totorello agreed to have lunch with Hinkes. However, Hinkes would periodically make sexual advances and would withhold United's business when Totorello declined his demands for sexual favors.
According to the complaint, "[i]n late 2007, Hinkes began to be more insistent in his desire and effort to have a sexual relationship with Totorello. Against Totorello's will, Hinkes kissed her and groped her body. When she refused his advances, he told her she was making a `very poor business decision.'" In November 2007, Hinkes began delaying payments to J.T. By December 2007, United, which previously had been buying $29,000 worth of tires per month from J.T., ceased doing business with J.T. altogether.
In pertinent part, plaintiffs' complaint accused United of unlawful sex discrimination in violation of N.J.S.A. 10:5-12(l), and retaliation in violation of N.J.S.A. 10:5-12(d).[3] Before filing an answer or engaging in any discovery, United filed a motion to dismiss the complaint for failure to state a claim on which relief could be granted. R. 4:6-2(e). In a brief statement of reasons, the trial court concluded:
[T]here is no evidence to suggest that Defendant United Rentals discriminated against Plaintiff based on her sex, as contemplated by the statute. Therefore, in light of the total absence of any evidence that would establish such sex-based discrimination, Count One of Plaintiff's Complaint as to Defendant United Rentals is Dismissed with Prejudice.
The judge also found that United had not unlawfully retaliated against plaintiffs "as contemplated by the statute."

II
A complaint sufficiently pleads a cause of action where one is "suggested by the facts." Velantzas v. Colgate-Palmolive Co., 109 N.J. 189, 192, 536 A.2d 237 (1988). Upon review of a complaint dismissed pursuant to R. 4:6-2(e), our inquiry:

*214 is limited to examining the legal sufficiency of the facts alleged on the face of the complaint.... At this preliminary stage of the litigation the Court is not concerned with the ability of plaintiffs to prove the allegation contained in the complaint. For purposes of analysis plaintiffs are entitled to every reasonable inference of fact.
[Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 746, 563 A.2d 31 (1989) (citations omitted).]
In our review, we owe no special deference to the trial court's legal conclusions. Manalapan Realty L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378, 658 A.2d 1230 (1995). With that standard in mind, we turn to the statute in question.
The LAD prohibits discriminatory refusals to do business on the basis of sex, by making it unlawful:

For any person to refuse to buy from, sell to, lease from or to, license, contract with, or trade with, provide goods, services or information to, or otherwise do business with any other person on the basis of the race, creed, color, national origin, ancestry, age, sex, gender identity or expression, affectional or sexual orientation, marital status, civil union status, domestic partnership status, liability for service in the Armed Forces of the United States, disability, nationality, or source of lawful income used for rental or mortgage payments of such other person or of such other person's spouse, partners, members, stockholders, directors, officers, managers, superintendents, agents, employees, business associates, suppliers, or customers.
[N.J.S.A. 10:5-12(l) (emphasis added).]
While there are few cases construing this section of the LAD, we have previously recognized that it prohibits refusals to do business with independent contractors based on age, sex, or handicap. See, e.g., Nini v. Mercer County Cmty. Coll., 406 N.J.Super. 547, 557, 968 A.2d 739 (App. Div.), certif. granted, 200 N.J. 206, 976 A.2d 383 (2009); Rubin v. Forest S. Chilton, 3rd, Mem'l Hosp., Inc., 359 N.J.Super. 105, 110-11, 819 A.2d 22 (App.Div. 2003); Horn v. Mazda Motor of Am., Inc., 265 N.J.Super. 47, 63, 625 A.2d 548 (App. Div.), certif. denied, 134 N.J. 483, 634 A.2d 528 (1993). In Rubin, we likewise held that the statute prohibits discriminatory terminations of contracts:
To distinguish between a refusal to enter into a contract and the termination of a contract where the motivation is illegal discrimination would mock the beneficial goals of the LAD, remedial legislation which should be liberally construed to advance its beneficial purposes.
[Rubin, supra, 359 N.J.Super. at 110-11, 819 A.2d 22.]
Narrowing the issue in this case, defendant concedes what is obvious from the plain wording of the statute: it prohibits sex discrimination in the form of refusals to buy from or otherwise do business with a person because of her gender. See Rubin, supra, 359 N.J.Super. at 110, 819 A.2d 22 ("Absent a clear indication to the contrary, language in [the LAD] is to be read in accordance with its plain and ordinary meaning."); DiProspero v. Penn, 183 N.J. 477, 492, 874 A.2d 1039 (2005). However, defendant contends that for purposes of subsection (l), sexual harassment is not prohibited sex discrimination.
Defendant advances this argument by contending that sexual harassment is prohibited only in employment, under subsection 12(a), and is not sex discrimination within the meaning of 12(l); that subsection 12(l) does not apply to "discriminatory conduct which arises after companies begin engaging in business transactions"; *215 and that women business owners do not need protection against sexual harassment by those with whom they do business. We find no merit in any of these arguments.
Although the LAD does not specifically mention sexual harassment as a prohibited form of discrimination, it is well-established that "[s]exual harassment is a form of sex discrimination that violates both Title VII and the LAD." Lehmann v. Toys `R' Us, Inc., 132 N.J. 587, 601, 626 A.2d 445 (1993) (citing Meritor Sav. Bank v. Vinson, 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986), and Erickson v. Marsh & McLennan Co., 117 N.J. 539, 555-56, 569 A.2d 793 (1990)). Where, as here, the harassment consists of sexual overtures and unwelcome touching or groping, it is presumed that the conduct was committed because of the victim's sex. "Thus when a plaintiff alleges that she has been subjected to sexual touchings or comments, ... she has established that the harassment occurred because of her sex." Lehmann, supra, 132 N.J. at 605, 626 A.2d 445.
In the employment context, Lehmann defined two different types of sexual harassment:
Sexual harassment jurisprudence generally divides sexual harassment cases into two categories. Quid pro quo sexual harassment occurs when an employer attempts to make an employee's submission to sexual demands a condition of his or her employment. It involves an implicit or explicit threat that if the employee does not accede to the sexual demands, he or she will lose his or her job, receive unfavorable performance reviews, be passed over for promotions, or suffer other adverse employment consequences. Hostile work environment sexual harassment, by contrast, occurs when an employer or fellow employees harass an employee because of his or her sex to the point at which the working environment becomes hostile.
[Id. at 601, 626 A.2d 445.]
In this case, plaintiffs are alleging that Totorello was subjected to quid pro quo sexual harassment, and therefore that is the only issue we address. Based on Lehmann, and the plain language of the LAD, N.J.S.A. 10:5-12(l), we have no hesitation in concluding that quid pro quo sexual harassment violates subsection (l). According to the complaint, United stopped doing business with J.T. because Totorello refused to submit to sexual demands from United's branch manager. Those allegations state a cause of action under N.J.S.A. 10:5-12(l). See Rubin, supra, 359 N.J.Super. at 110-11, 819 A.2d 22 (subsection (l) prohibits the discriminatory termination of a contract).
Defendant's reliance on Pukowsky v. Caruso, 312 N.J.Super. 171, 180, 711 A.2d 398 (App.Div.1998); Thomas v. County of Camden, 386 N.J.Super. 582, 902 A.2d 327 (App.Div.2006), and Chrisanthis v. County of Atl., 361 N.J.Super. 448, 825 A.2d 1192 (App.Div.), certif. denied, 178 N.J. 31, 834 A.2d 404 (2003), is misplaced because those cases did not address subsection 12(l). Rather, they concerned claims of sexual harassment in employment under N.J.S.A. 10:5-12(a). In that context, we addressed whether the plaintiffs should be considered employees, covered under subsection 12(a), or independent contractors who would not be covered under 12(a). We recognized that distinction in Rubin, supra, where we rejected the defendant's reliance on Pukowsky in opposing a claim under 12(l). Rubin, supra, 359 N.J.Super. at 111, 819 A.2d 22.
If we had any doubts as to the application of 12(l) here, they would be allayed by considering the important social policy underpinning the LAD. Our courts have long recognized that the LAD was enacted "to eradicate the cancer of discrimination." *216 Jackson v. Concord Co., 54 N.J. 113, 124, 253 A.2d 793 (1969). The statute is to be liberally construed to accomplish the Legislature's overriding goal of eliminating invidious discrimination. N.J.S.A. 10:5-3. Moreover, "[d]iscrimination based on gender is `peculiarly repugnant in a society which prides itself on judging each individual by his or her merits.'" Lehmann, supra, 132 N.J. at 600, 626 A.2d 445 (quoting Grigoletti v. Ortho Pharm. Corp., 118 N.J. 89, 96, 570 A.2d 903 (1990)).
The quid pro quo sexual harassment alleged in the complaint, if legally permitted, would stand as a barrier to women's ability to do business on an equal footing with men. Construing N.J.S.A. 10:5-12(l) to prohibit such opprobrious conduct is consistent with the Legislature's intent to eliminate sex discrimination in contracting.
Reversed and remanded.
NOTES
[1] Incorrectly designated as United Rentals, Inc.
[2] The complaint against Hinkes individually was dismissed, and he is not a party to this appeal. We will refer to United as "defendant."
[3] Subsection 12(d) prohibits reprisals against a person for asserting rights under the LAD. Plaintiffs' claim under 12(d) was based on the 12(1) claim and will not be separately addressed here.