**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1765-24

KAREN MCDERMOTT,

      Plaintiff-Appellant,

v.

CITY OF PLAINFIELD
and DANIEL LONGO, in his
professional and individual
capacity as an Inspector for
the CITY OF PLAINFIELD,[1]

      Defendants-Respondents.

_____

Submitted February 4, 2026 – Decided March 11, 2026

Before Judges Mayer and Vanek.

On appeal from the Superior Court of New Jersey, Law Division, Union County, Docket No. L-1314-19.

Krakower DiChiara LLC, attorneys for appellant (Michael R. DiChiara, on the briefs).

---

[1] Defendant Daniel Longo died during the pendency of this litigation. Plaintiff signed a February 19, 2025 stipulation of dismissal with prejudice as to her claims against Longo.

Rainone Coughlin Minchello, LLC, attorneys for respondent City of Plainfield (Frank J. Dyevoich, on the brief).

Mason Griffin & Pierson, PC, attorneys for amicus curiae National Employment Lawyers Association of New Jersey (Elizabeth Zuckerman, of counsel and on the brief).

PER CURIAM

Plaintiff Karen McDermott appeals from a November 27, 2024 order granting summary judgment to defendant City of Plainfield (City). We affirm.

The following facts are derived from statements made to officers with the Plainfield Police Department related to an alleged sexual assault of plaintiff by defendant Daniel Longo,[2] the police reports following an investigation into the incident, and deposition testimony.

Incident during electrical inspection of plaintiff's home

Residents are required to allow City inspectors into their homes to obtain a certificate of compliance once they complete work for which the City issued a permit. On April 17, 2017, Longo worked as a licensed electrical inspector for the City's building and construction department. He conducted an electrical inspection of plaintiff's home on that date.

---

[2] Plaintiff's interaction with the police on April 17, 2017, and her responses to the officers' questions were captured video through a body-worn camera.

Longo arrived at plaintiff's home before noon on April 17. At the time, plaintiff was on the phone with her boyfriend. According to plaintiff, Longo stated she failed the inspection. Plaintiff's boyfriend allegedly overheard Longo telling plaintiff that she failed the inspection.

Plaintiff said Longo requested her phone number, which plaintiff presumed related to completion of paperwork associated with the inspection. At her deposition, plaintiff was unable to remember many of the details regarding the incident with Longo but specifically denied Longo propositioned her for sexual favors in return for a passing inspection. However, plaintiff subsequently claimed Longo conditioned the outcome of the inspection on her performing sexual favors.

During the inspection, plaintiff remained on the phone with her boyfriend. The boyfriend purportedly heard a struggle between plaintiff and Longo. He testified that plaintiff said Longo sexually assaulted her. The boyfriend then called the City's building and construction department to report the incident. The supervisor for the City's building and construction department called the police and requested they investigate a reported assault.

The police arrived at plaintiff's home and asked her questions regarding the reported assault. Plaintiff explained that Longo conducted an electrical

3

A-1765-24

inspection as part of the City's issuance of a certificate of compliance. After the inspection, plaintiff said she gave Longo a "friendly hug" and thanked him because "he was a nice guy."

In her statement to the police, plaintiff said Longo assaulted her after he completed his inspection. According to plaintiff, "Longo pushed [her] against a [kitchen] countertop, bit her breast, and put his hand between [her] legs." She did not recall having any conversation with Longo before, during, or after the alleged assault. Plaintiff told the officers she rebuffed Longo by telling him "no" and "stop." According to plaintiff, her dog chased Longo out of the house.

Plaintiff also told the police she knew her home passed the electrical inspection. Longo issued a sticker confirming plaintiff's home passed the electrical inspection before he left the house on April 17. In their report, the police noted the presence of an inspection sticker reflecting the electrical inspection approval.

Plaintiff further told the police that Longo called her twice after leaving the house to apologize for making her feel uncomfortable. At her deposition, plaintiff did not recall having any conversations with Longo after he left her home.

4

The police then spoke to Longo. The police also recorded their interaction with Longo through a body-worn camera. Longo claimed plaintiff hugged him tightly and kissed his neck after he completed the inspection. He denied touching her breasts or placing his hand inside her pants. He admitted calling plaintiff twice after he left the home to check on her because she appeared to be under the influence or drunk during his inspection.

After speaking with plaintiff and Longo, the investigating officers concluded there was some type of "physical interaction." However, the officers did not believe plaintiff was being "completely truthful" because of "inconsistencies in [her] statement of events."

City's policies governing employees

The City has written policies applicable to its employees addressing sexual harassment, harassment, discrimination and disability accommodation, and violence prevention. The City also has a procedure for reporting employee complaints and investigating employee complaints. Additionally, the City mandates criminal background checks for its employees. Despite these policies, plaintiff asserted the City lacked a policy specifying how its inspectors were required to conduct themselves during home inspections.

A-1765-24

Approximately seven months prior to inspecting plaintiff's home, Longo passed an extensive background check under the auspices of the New Jersey Department of Community Affairs (DCA), qualifying him to serve as a licensed construction official. Additionally, Longo completed the City's mandatory sexual harassment training within the year preceding his inspection of plaintiff's home.

Other than the incident with plaintiff, Longo had no reports of any misconduct with homeowners. The only disciplinary action against Longo happened well after the incident with plaintiff. In that one instance, the City disciplined Longo for using his personal cellphone at work and "taking too long to perform inspections." Despite this disciplinary action, the City reported Longo was "a model employee" and it "had zero cause for concern about his competency, demeanor, and continued employment."

Plaintiff's complaint

In January 2023, plaintiff sued Longo and the City. In her complaint, plaintiff alleged the City violated 42 U.S.C. § 1983 by failing to properly supervise Longo and infringing on her constitutional right to bodily integrity under the Fourteenth Amendment to the United States Constitution. Additionally, plaintiff asserted the City violated the New Jersey Law Against

6

Discrimination (LAD), N.J.S.A. 10:5-1 to -50, because the City's building and construction department constituted a "place of public accommodation" and Longo's misconduct was "sufficiently severe or pervasive to materially alter the terms and conditions of plaintiff's employment and to create a discriminatorily abusive environment." Plaintiff also claimed the City was negligent because it "had a duty to take reasonable steps to protect [her] from foreseeable harm while [Longo] entered her house to conduct an inspection" and "had a duty to exercise reasonable care to prevent Longo from using his position as an employee, and/or agent of the City . . . to target, assault, and/or sexually assault [her]." Plaintiff further contended the City "negligently, carelessly, and recklessly, failed and omitted to properly, hire, retain and failed to supervise Longo, giving him access to residents, and failed to provide reasonable and adequate protection and safety to residents, and particularly to [her]."

At the close of discovery, the City moved for summary judgment. Plaintiff opposed the motion.

A-1765-24

Summary judgment decision

On November 22, 2024, the judge heard argument on the City's motion. In a November 27, 2024 amended order and written statement of reasons, the judge entered summary judgment for the City.

Giving plaintiff every favorable inference, including that Longo said plaintiff's home failed to pass the electrical inspection, the judge found Longo's alleged misconduct conduct fell outside the scope of his employment with the City. The judge rejected plaintiff's argument for expansion of liability beyond situations between an employer-employee to hold the City liable for Longo's purported intentional act. The judge concluded "there [wa]s no evidence to support an assertion that . . . Longo's tortious act advanced an interest of the City." To the extent there was a sexual assault, the judge found Longo's actions served only his personal interest.

Regarding plaintiff's § 1983 claim, the judge, citing Monell v. New York City Department of Social Services, 436 U.S. 658, 694 (1978), noted plaintiff "failed to show that a violation of 'her constitutional right to bodily integrity' was a direct result of the City's policies or customs." Additionally, citing Bielevicz v. Dubinon, 915 F.2d 845, 850 (3d Cir. 1990), the judge stated plaintiff's "argument that a lack of a specific policy as to how inspectors should

conduct themselves in a home at best amounts to 'proof of the mere existence of an unlawful policy or custom,' which is insufficient to maintain a cause of action under § 1983."

The judge highlighted the City's "robust policies surrounding anti-discrimination, general anti-harassment, anti-sexual harassment, violence prevention, and prohibited behaviors," finding "no evidence indicating that there were any previous complaints made against . . . Longo, that other residents were assaulted by any City employees, or that any other course of conduct surrounding sexual assault against homeowners was unofficially endorsed by the City." Based on the City's "competent evidence of the policies and procedures in place," the judge found plaintiff's "mere assertion that a lack of policy, without more, is insufficient for a trier of fact to find [the City] is liable under § 1983."

The judge also rejected plaintiff's "state-created danger" argument. The judge held the facts in plaintiff's case were distinguishable from the facts presented in Gormley v. Wood-El, 218 N.J. 72 (2014). The Gormley case involved a lawsuit by an attorney who was assaulted by a patient while visiting a psychiatric facility. Id. at 89-90. The psychiatric facility had an extensive history of assaults committed by patients against visitors and staff. Id. at 88.

The New Jersey Supreme Court concluded the "defendants affirmatively used their authority to create a danger that made [the plaintiff] more vulnerable to the assault." Id. at 108-09. Unlike the plaintiff in Gormley, the judge found plaintiff failed to show sufficient "severity or pervasiveness of a danger . . . to conclude that the City created a danger that made plaintiff vulnerable."

Additionally, the judge dismissed plaintiff's intentional infliction of emotional distress claim, finding "no evidence that . . . Longo was acting in the scope of his employment when the tort occurred" and explaining "[s]uch evidence [wa]s crucial to attaching liability to the City." Based on plaintiff's statement to the police recorded on body-worn camera footage, the judge found the alleged assault occurred "after the completion of the electrical inspection."

Regarding plaintiff's LAD claims, even accepting plaintiff's argument that the City's building and construction department was a "place of public accommodation" under the LAD, the judge concluded plaintiff's claims failed on the merits. Under the Restatement (Second) of Agency (Am. L. Inst. 1958) (Restatement), § 219, the judge explained the City could be liable for plaintiff's quid pro quo or hostile work environment claims under the LAD if plaintiff met any of the following tests:

(1) A[n employer] is subject to liability for the torts of his [employees] committed while acting within the scope of their employment.

(2) A[n employer] is not subject to liability for the torts of his [employees] acting outside the scope of their employment, unless:

(a) the [employer] intended the conduct or the consequences, or

(b) the [employer] was negligent or reckless, or

(c) the conduct violated a non-delegable duty of the [employer], or

(d) the [employee] purported to act or to speak on behalf of the principal and there was reliance upon apparent authority, or he was aided in accomplishing the tort by the existence of the [employment] relation.

[Restatement, § 219(1)-(2).]

Under the first prong, the judge found "the record indicate[d] [Longo] was not acting in the scope of his employment at the time of the alleged assault." She further held the City could not be liable because the alleged assault occurred after completion of the inspection. The judge specifically concluded plaintiff could not satisfy any of the prongs to hold the City vicariously liable because "Longo was subject to and informed of anti-discrimination, harassment, sexual harassment, and violent behavior policies." Therefore, the judge held the City was not vicariously liable for Longo's purported actions under the LAD.

11                                                                                    A-1765-24

The judge also rejected plaintiff's argument that the training Longo received was insufficient because it did not include any policies specifically addressing sexual harassment of homeowners. The judge found "it [wa]s plainly apparent that . . . Longo's training was meant to encompass all persons whom City employees encountered" and the City's "failure to include the phrase 'homeowners' in the various policies d[id] not create a genuine issue of material fact."

Additionally, the judge dismissed plaintiff's hostile work environment claim. The judge concluded plaintiff was never an employee of the City and, therefore, could not assert a hostile work environmental claim. Further, even if she were a City employee, the judge rejected plaintiff's contention that this single incident rose to the requisite level of severity, from the perspective of a reasonable person, to demonstrate the working environment was hostile. The judge expressly found Longo's alleged assault "was a single and isolated incident."

In dismissing plaintiff's negligence claims, the judge reiterated the City could not be liable under traditional negligence theories because Longo was not acting within the scope of employment at the time of the alleged assault.

A-1765-24

Regarding plaintiff's negligent hiring claim, the judge stated that the City "did not know or have reason to know of . . . Longo's dangerous characteristics at the time of hiring or during his employment." Based on evidence in the record, the judge found there were "no previous complaints made by any residents regarding . . . Longo." The judge also explained Longo "passed an extensive background check" by the DCA prior to receiving his construction official license and underwent "an additional mandatory background check policy" by the City before he became an employee. Further, based on the facts adduced in the record, the judge determined "Longo did not lack adequate training" or "[need] additional supervision on the job." The judge explained that Longo's being disciplined by the City for "taking too long to perform inspections and . . . using his personal cellphone during work hours" did not create a genuine issue of material fact regarding plaintiff's negligent supervision claim.

After considering the evidence, the judge concluded plaintiff failed "to establish that the City could have reasonably known that defendant Longo was dangerous and capable of putting members of the public, such as plaintiff, at risk of harm and failed to act on such knowledge." Thus, the judge entered summary judgment in favor of the City and dismissed plaintiff's complaint with prejudice.

A-1765-24

On appeal, plaintiff contends the judge erred in granting summary judgment to the City because there were genuine issues of material fact regarding the City's liability for Longo's purported misconduct. Plaintiff asserts the City should be vicariously liable under § 219 of the Restatement even if Longo was not acting within the scope of his employment at the time of the alleged assault. Additionally, plaintiff argues the City's building and construction department constitutes a "place of public accommodation" and, therefore, should be vicariously liable for Longo's purported misconduct under her theory of liability premised on quid pro quo or hostile work environment.

On October 22, 2025, the National Employment Lawyers Association (NELA) moved to appear as amicus curiae in support of plaintiff's appeal. In a November 7, 2025 order, we granted NELA's application. NELA submitted a brief addressing the viability of plaintiff's harassment claim against the City under the LAD.

We reject the arguments presented by plaintiff and NELA.

When reviewing an order granting summary judgment, we apply the same standard as the trial court. Boyle v. Huff, 257 N.J. 468, 477 (2024). A trial court must grant summary judgment "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show

that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." Gayles by Gayles v. Sky Zone Trampoline Park, 468 N.J. Super. 17, 22 (App. Div. 2021) (quoting Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 244 N.J. 189, 199 (2016)). A genuine issue of material fact exists "only if, considering the burden of persuasion at trial, the evidence submitted by the parties on the motion, together with all legitimate inferences therefrom favoring the non-moving party, would require submission of the issue to the trier of fact." Ibid. (quoting Grande v. Saint Clare's Health Sys., 230 N.J. 1, 24 (2017)). "If 'the evidence is so one-sided that one party must prevail as a matter of law,' summary judgment is proper." Meade v. Twp. of Livingston, 249 N.J. 310, 327 (2021) (quoting Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995)) (internal quotation marks omitted).

We first consider whether the judge erred in finding the City could not be vicariously liable to plaintiff for Longo's alleged misconduct. We find no error in the judge's determination.

Plaintiff does not contend Longo was acting within the scope of his employment when he purportedly assaulted her. Rather, plaintiff argues the City is vicariously liable for Longo's conduct because "an employer may be held

15

liable even under circumstances where it appears that an employee's misconduct was not necessarily motivated by a desire to benefit the employer."

Employers may be held vicariously liable for an employee's misconduct under § 219(2) of the Restatement. See also Griffin v. City of E. Orange, 225 N.J. 400, 414 (2016). Section 219(2)(b) of the Restatement provides: "A master is not subject to liability for the torts of his servants acting outside the scope of their employment, unless: . . . (b) the master was negligent or reckless." Section 219(2)(d) of the Restatement imposes vicarious liability against an employer if the employee acted with apparent authority and was aided in accomplishing the sexual assault through his position as the employee. We agree with the judge that plaintiff's proofs are insufficient to establish vicarious liability against the City under § 219(2)(b) or (d) of the Restatement.

Under § 219(2)(b) of the Restatement, to assert vicarious liability against an employer, a plaintiff must establish "that an employer was negligent by its failure to have in place well-publicized and enforced anti-harassment policies, effective formal and informal complaint structures, training, and/or monitoring mechanisms." Lehmann v. Toys 'R' Us, Inc., 132 N.J. 587, 621 (1993). A court should consider "[t]he means employed by an institution to deter harassment[] and the enforcement of those means," such as policies and training programs,

when "assessing that institution's vicarious liability for the actions of an individual over whom the institution exercises control." Godfrey v. Princeton Theological Seminary, 196 N.J. 178, 200 (2008).

Plaintiff asserts the City "failed to provide any training to employees such as Longo concerning sexual harassment and homeowners[,] . . . failed to implement any policies concerning how inspectors like Longo were to conduct themselves inside of someone's home," and lacked a complaint procedure for homeowners to report sexual harassment or sexual assault. Having reviewed the record, we are satisfied the City produced documents evidencing policies prohibiting discriminatory and harassing conduct by City employees when interacting with the public.

Additionally, the judge found Longo received training on the City's anti-discrimination and anti-harassment policies the same year as the alleged assault. The judge found "a reasonable factfinder could not conclude that the City intended for . . . Longo to allegedly commit sexual assault [and] that the City was negligent or reckless in training Longo on these policies." Plaintiff failed to present any evidence identifying City employees who violated the City's policies regarding interactions with homeowners aside from her allegation against Longo.

17

On these facts, the judge did not err in finding Longo received anti-discrimination and anti-harassment training from the City. Based on the implementation of policies and training governing its employees, the City was not negligent or reckless under Section 219(2)(b) of the Restatement to be vicariously liable for Longo's alleged misconduct.

Nor is the City liable for Longo's actions under § 219(2)(d) of the Restatement. Under that section, plaintiff argues an employer may be held liable if the employee "could not perform the acts with[out] the aid of their employer." She asserts the City should be held liable for Longo's actions because the alleged assault occurred during a City-mandated inspection for the issuance of a certificate of compliance.

Because the alleged sexual assault was unrelated to Longo's duties and activities as a City electrical inspector, plaintiff's argument fails on its merits. Based on the evidence, the judge concluded Longo was not acting within the scope of his duties because the alleged assault occurred after Longo completed the inspection. The judge held Longo's alleged misconduct did not act or speak for the City under § 219(d)(2) of the Restatement. We are satisfied the judge correctly concluded any alleged assault by Longo occurred after he completed

the inspection and, therefore, the purported assault was unrelated to the City-required inspection of plaintiff's home.

We next consider plaintiff's argument that the judge erred in concluding the City could not be vicariously liable for Longo's alleged sexual harassment under the LAD. We disagree.

The LAD's "overarching purpose is to eradicate discrimination in society" and "was enacted 'to protect the public's strong interest in a discrimination-free workplace.'" Savage v. Twp. of Neptune, 257 N.J. 204, 216 (2024) (citation omitted) (quoting Lehmann, 132 N.J. at 600). "The LAD should be construed liberally." Ptaszynski v. Uwaneme, 371 N.J. Super. 333, 345 (App. Div. 2004) (citing Franek v. Tomahawk Lake Resort, 333 N.J. Super. 206, 217 (App. Div. 2000)).

Plaintiff, construing the LAD liberally, argues the City's building and construction department qualifies as a "place of public accommodation." Based on her assertion, plaintiff claims the judge erred in granting summary judgment to the City on her quid pro quo and hostile work environment claims.

N.J.S.A. 10:5-12(f)(1) states "[i]t shall be . . . unlawful discrimination . . . [f]or any . . . agent, or employee of any place of public accommodation directly or indirectly to refuse, withhold from or deny to any person any of the

accommodations, advantages, facilities or privileges thereof . . . on account of the . . . sex . . . of such person."  N.J.S.A. 10:5-5(l) identifies a non-exclusive list identifying "place[s] of public accommodation."  Importantly, the statute states:  "Nothing herein shall be construed to include or to apply to any institution, bona fide club, or place of accommodation, which is in its nature distinctly private."  Ibid.

"To help decide whether an entity qualifies as a public accommodation, courts examine 'whether the entity engages in broad public solicitation, maintains close relationships with the government or other public accommodations, or whether it is similar to enumerated or other previously recognized public accommodations.'"  Ptaszynski, 371 N.J. Super. at 346 (quoting Dale v. Boy Scouts of Am., 160 N.J. 562, 589 (1999)).  "Interaction with the public is a key factor in determining whether an entity qualifies as a public accommodation under the statute."  Ibid.

Here, giving plaintiff every favorable inference in opposition to the City's motion, the judge presumed the City's building and construction department constituted a "place of public accommodation" even though the alleged assault occurred in a private home.  Notwithstanding the judge's presumption that plaintiff's private home could be deemed a "place of public accommodation,"

the judge concluded the City was not vicariously liable for Longo's alleged sexual harassment under the LAD.

"[S]exual harassment in a place of public accommodation constitutes discrimination 'on account of . . . sex 'in the furnishing' of 'any of the accommodations, advantages, facilities or privileges' of 'any place of public accommodation.'" C.V. by & through C.V. v. Waterford Twp. Bd. of Educ., 255 N.J. 289, 309 (2023) (quoting N.J.S.A. 10:5-12(f)). Under New Jersey law, there are

> two types of actionable sexual harassment: (1) "[q]uid pro quo sexual harassment," "when an employer attempts to make an employee's submission to sexual demands a condition of . . . employment"; and (2) "[h]ostile work environment sexual harassment," "when an employer or fellow employees harass an employee because of . . . sex to the point at which the working environment becomes hostile."
>
> [Ibid. (alterations in original) (quoting Lehmann, 132 N.J. at 601).]

"[I]n cases of supervisory sexual harassment, whether the harassment is of the quid pro quo or the hostile work environment type, the employer is directly and strictly liable for all equitable damages and relief." Lehmann, 132 N.J. at 617.

A-1765-24

Quid pro quo sexual harassment "involves an implicit or explicit threat that if the employee does not accede to the sexual demands, he or she will lose his or her job, receive unfavorable performance reviews, be passed over for promotions, or suffer other adverse employment consequences." Id. at 601. While these actions traditionally involved employer-employee relationships, New Jersey courts have expanded the scope of actionable quid pro quo conduct to encompass general business relationships. See J.T.'s Tire Serv., Inc. v. United Rentals N. Am., Inc., 411 N.J. Super. 236, 242 (App. Div. 2010) (finding quid pro quo harassment claim proper where the defendant refused to buy from or contract with the plaintiff absent the plaintiff's female owner acceding to sexual demands from the defendant's branch manager).

Because the judge determined Longo was not acting within the scope of his employment at the time of the alleged assault, the judge declined to address plaintiff's quid pro quo claim. Even if the judge had addressed plaintiff's quid pro quo claim on the merits, we are satisfied plaintiff is unable to prevail on such a claim. Quid pro quo claims require an employer-employee work relationship or refusal to enter into a contract or termination of a contract based on sex. Here, the parties had no such relationship at the time of the alleged

assault.  Thus, the judge did not err in dismissing plaintiff's quid pro quo claim under the LAD.

Nor did the judge err in finding the City could not be vicariously liable for creating a hostile work environment under the LAD.  To succeed on a hostile work environment sexual harassment claim, "a plaintiff must allege conduct that '(1) would not have occurred but for the employee's gender'; and that 'was (2) severe or pervasive enough to make a (3) reasonable woman believe that (4) the conditions of employment are altered and the working environment is hostile or abusive.'"  C.V., 255 N.J. at 309 (quoting Lehmann, 132 N.J. at 603-04) (emphasis omitted).  "Severe or pervasive" means "whether a reasonable person would believe that the conditions of employment have been altered and that the working environment is hostile."  Shepherd v. Hunterdon Developmental Ctr., 174 N.J. 1, 24 (2002) (citing Lehmann, 132 N.J. at 604).

Plaintiff cannot prevail on her hostile work environment claim under the LAD because she lacked a work relationship with the City or Longo at the time of the alleged assault.  To establish a hostile work environment claim, there must have been a working relationship.  Because there was no working relationship between plaintiff and the City or between plaintiff and Longo, the judge did not err in rejecting plaintiff's hostile work environment claim.

23

To avoid rejection of her hostile work environment claim, plaintiff and NELA suggest substitution of the term "work environment" with "place of public accommodation." However, neither plaintiff nor NELA identified any New Jersey case law to support their argument.

While New Jersey courts have expanded the <u>Lehmann</u> standard beyond workplace relationships, the case law as expanded is expressly limited to school settings. <u>See</u> <u>C.V.</u>, 255 N.J. at 311 ("[T]he <u>Lehmann</u> standard should apply in the workplace and in the school setting" because "[s]tudents in the classroom are entitled to no less protection from unlawful discrimination and harassment than their adult counterparts in the workplace.") (second alteration in original) (quoting <u>L.W. ex rel. L.G. v. Toms River Reg'l Schs. Bd. of Educ.</u>, 189 N.J. 381, 405-06 (2007)). Plaintiff and NELA cited no New Jersey cases expanding the <u>Lehmann</u> test beyond the workplace and school settings. Thus, the judge did not err in rejecting plaintiff's LAD arguments and granting summary judgment in favor of the City.

To the extent we have not addressed any of the arguments presented by plaintiff or NELA, they lack sufficient merit to warrant discussion in a written opinion. <u>R.</u> 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Hanley

Clerk of the Appellate Division

24