PRECEDENTIAL

UNITED STATES COURT OF APPEALS FOR THE
THIRD CIRCUIT
_____

No. 11-3096
_____

TAMIKA COVINGTON,
                                        Appellant

v.

INTERNATIONAL ASSOCIATION OF APPROVED
BASKETBALL OFFICIALS, INTERNATIONAL
ASSOCIATION OF APPROVED BASKETBALL
OFFICIALS, BOARD 193, COLONIAL VALLEY
CONFERENCE,
NEW JERSEY STATE INTERSCHOLASTIC ATHLETIC
ASSOCIATION,
FRED DUMONT, in his official and individual capacity,
HAMILTON SCHOOL DISTRICT,
HAMILTON TOWNSHIP BOARD OF EDUCATION, and
JOHN DOES 1-10

v.

FEDERAL INSURANCE COMPANY
_____

On Appeal from the United States District Court
for the District of New Jersey

(D.C. No. 3-08-cv-3639)
District Judge: Honorable Garrett E. Brown, Jr.
_____

Argued: December 18, 2012

Before: MCKEE, Chief Judge, SLOVITER, and
VANASKIE, Circuit Judges

(Filed: March 14, 2013)

David Zatuchni          [ARGUED]
Zatuchni & Associates
Lambertville, NJ  08530
Attorney for Appellant

Anne P. McHugh
Andrew L. Watson      [ARGUED]
Pellettieri, Rabstein & Altman
Princeton, NJ  08543
Attorney for Appellees International
Association of Approved Basketball
Officials Board 193, International
Association of Approved Basketball
Officials and Fred Dumont

Arnold M. Mellk
Goldberger & Goldberger
Clifton, NJ  07015
Attorney for Appellees
International Association of Approved
Basketball Officials, Board 193 and
International Association of Approved

Basketball Officials


Kellie A. Allen
Joseph L. Turchi      [ARGUED]
Timothy J. Schipske
Salmon, Ricchezza, Singer & Turchi
Philadelphia, PA  19103
Attorney for Appellee International
Association of Approved
Basketball Officials

Gregory J. Giordano
Casey R. Langel      [ARGUED]
Lenox, Socey, Formidoni,
Giordano, Cooley, Lang & Casey
Lawrenceville, NJ  08648
Attorney for Appellees
Hamilton School District
and Hamilton Township
Board of Education

Steven P. Goodell     [ARGUED]
Herbert, Van Ness, Cayci & Goodell
Lawrenceville, NJ  08648
Attorney for Appellee New Jersey
State Interscholastic Athletic Association

David W. Carroll
John E. Collins
Parker McCay

Lawrenceville, NJ  08648
Attorney for Appellee
Colonial Valley Conference

————————

OPINION

————————

SLOVITER, Circuit Judge.

When the Defense Department rescinded the ban on women in combat positions, it effectively undermined the presumption of female inferiority that had for years closed opportunities for women in the military, in sports, and in other fields.  In her Second Amended Complaint ("SAC"), Tamika Covington, who has been a basketball official in New Jersey and Pennsylvania for over ten years, alleges gender employment[1] discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, *et seq.*, and the New Jersey Law Against Discrimination, N.J. STAT. ANN. § 10:5-1, *et seq.* ("NJLAD"), because she has been excluded from

—————————————

[1] Title VII and Title IX prohibit discrimination based on sex. The District Court used "gender" and "sex" interchangeably, as do we.

4

officiating at boys' high school varsity basketball games. Without hearing argument on the merits of Covington's central claim, the District Court dismissed the complaint with prejudice against all defendants and ordered the case closed. Covington appealed.

## I.

Covington brings her suit against various entities that have some role in high school athletics in New Jersey. She names as defendants the International Association of Approved Basketball Officials, Board 193 ("Board 193"), the principal defendant, which assigns officials to officiate at regular season high school basketball games; the New Jersey State Interscholastic Athletic Association ("NJSIAA"), the entity that controls and supervises post-season tournament games and assigns officials to referee those games; the International Association of Approved Basketball Officials ("IAABO"), the Colonial Valley Conference ("CVC"), the Hamilton Township School District ("Hamilton"), a school at which Covington has officiated, and Fred Dumont, the President of Board 193.[2] Covington alleges that Hamilton, CVC, and NJSIAA are liable under Title VII as her employers; Board 193 is liable as an employment agency; NJSIAA and IAABO are

---

[2] Covington does not assert any federal claims against Dumont.

vicariously liable as Board 193's principals; and CVC is vicariously liable as Hamilton's principal.

The essence of Covington's claim is that Board 193 has not assigned her to officiate at boys' regular season games because of its policy discriminating against women, that NJSIAA has not assigned her to officiate at boys' post-season games for the same reason, and that the other defendants have assisted in that policy.[3] Despite the absence or scarcity of women referees assigned to boys' varsity games, none of the defendants has conceded that it employed a policy to exclude females from a position officiating in boys' basketball tournaments and there is no document that so provides.[4] In the absence of any written policy, Covington alleges a pattern and practice of discrimination. The District Court did not address Covington's allegations of discrimination on the merits, instead dismissing on other grounds.

---

[3]The issue of whether Covington was not assigned to boys' games due to her qualifications or for an illegitimate discriminatory reason is not before us today. However, we note that in oral argument, counsel for NJSIAA stated that NJSIAA has *never* assigned female referees, including Covington, to boys' post-season games. Furthermore, counsel for Covington stated that Covington was only assigned to boys' regular season varsity games after this lawsuit was brought.

[4] It is unlikely that any female will believe that there wasn't a trace of discrimination if only males were uniformly selected to referee the most desirable games.

The District Court granted judgment on the pleadings on Covington's original Complaint, holding that Covington did not adequately plead her employment by Board 193 or IAABO as required by Title VII, and that Covington did not allege that Hamilton received federal financial assistance as required to state a Title IX claim. Covington sought to remedy these deficiencies by filing the SAC. It is that document that is before us now.

The District Court then issued an Order to Show Cause, asking Covington to explain why the SAC should not be dismissed. Covington filed a reply, and the parties had extensive discovery. The Court dismissed the SAC without oral argument, holding that Covington had not adequately alleged facts sufficient to establish an employer-employee or other relationship necessary to hold defendants liable under Title VII. The Court also declined to exercise supplemental jurisdiction over the state law claims.

The District Court cited *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), in support of its dismissal. However, those cases do not provide a panacea for defendants. Instead, they merely require that plaintiff raise a "plausible claim for relief." *Iqbal,* 556 U.S. at 679. Although it is established that under the *Twombly* and *Iqbal* pleading standards, "[f]actual allegations must be enough to raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555, those cases make it clear that a claimant does not have to "set out in detail

7

the facts upon which he bases his claim." *Id*. at 555 n.3 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)) (emphasis omitted).  The pleading standard "is not akin to a 'probability requirement'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556); to survive a motion to dismiss, a complaint merely has to state a "plausible claim for relief." *Iqbal,* 556 U.S. at 679.

It appears that counsel who filed the original complaint relied for the plausibility of its claim of gender discrimination on the success of a similar claim in *Kemether v. Pennsylvania Interscholastic Athletic Association Inc*., 15 F. Supp. 2d 740 (E.D. Pa. 1998).  In that case, the district court upheld a jury verdict for an excluded female official who officiated Pennsylvania high school basketball games.  In dismissing Covington's original complaint, the District Court did not conceal its disrespect for the *Kemether* opinion.  We believe that opinion was entitled to more serious regard than it was given by the District Court in light of the similarity of the structure of the sport in the two states, the plaintiffs' claims, and the jury verdict for Kemether in the Eastern District of Pennsylvania.

II.

Covington, like Kemether, alleges violation of Title VII and Title IX.  The District Court had jurisdiction over the Title VII and Title IX claims pursuant to 28 U.S.C. § 1331 and jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.  We have

8

jurisdiction over this appeal pursuant to 28 U.S.C. § 1291.  This court reviews *de novo* a district court's dismissal of a complaint for failure to state a claim.  *See Graves v. Lowery*, 117 F.3d 723, 726 (3d Cir. 1997).

Title VII states, in part, that it is an "unlawful employment practice for an employer (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual . . . because of such individual's . . . sex . . . or (2) to limit, segregate, or classify his employees *or applicants* for employment in any way which would deprive or tend to deprive any individual of employment opportunities . . . because of such individual's . . . sex."  42 U.S.C. § 2000e-2(a) (emphasis added).

Congress enacted Title VII "for the ameliorative purpose of eradicating prohibited forms of discrimination from the workplace." *Martin v. United Way of Erie Cnty.*, 829 F.2d 445, 449 (3d Cir. 1987).  The intent of the statute is to "drive employers to focus on qualifications rather than on race, religion, sex, or national origin." *Price Waterhouse v. Hopkins*, 490 U.S. 228, 243 (1989).  Instead of meeting Covington's discrimination allegations, the defendants argue they are not covered by the provisions of the antidiscrimination statutes because they are not encompassed within the definitions of the relevant statutes; in other words, they are free to discriminate.  Presumably, they would be as free to discriminate on the basis of race as well as sex.  There is nothing to suggest that Congress intended to

9

exclude school sports officials from the ameliorative provisions of Titles VII and IX, which is what the District Court's narrow reading of the relevant statutory language would accomplish.

In order to state a Title VII claim, Covington must allege an employment relationship with the defendants. To determine whether Covington is an employee, we look to the factors set forth in *Nationwide Mutual Insurance Co. v. Darden*, 503 U.S. 318 (1992). We agree with the District Court when it reads our case law to focus the employment relationship analysis on "the level of control the defendant[s]. . . exerted over the plaintiff: which entity paid [the employees'] salaries, hired and fired them, and had control over their daily employment activities." *Covington v. Int'l Ass'n of Approved Basketball Officials*, No. 08-3639, 2010 WL 3404977, at *2 (D.N.J. Aug. 26, 2010). Because Hamilton has some input as to which officials are assigned to each game, chooses the time, date, and location of the games, and pays the officials for their work during the basketball games, with payment for work generally understood as one of the principal indicia of an employer-employee relationship, we hold that Hamilton may fairly be identified as Covington's employer.[5]

_____

[5]At this stage of the litigation, we must accept as true all factual allegations in the SAC and all reasonable inferences that can be drawn therefrom. *See Graves*, 117 F.3d at 726.

10

Another defendant Covington lists as an employer, NJSIAA, is an athletic organization made up of high schools in New Jersey. It controls the post-season tournaments, directly assigns officials to post-season games, and pays the referees for their work in the post-season. Officials who are chosen for post-season games must be dues-paying members of NJSIAA, enter into agreements with NJSIAA, and sign liability waivers. NJSIAA provides the officials with liability insurance. NJSIAA plays a role in training the officials and has the power to certify and register them. Officials are required to abide by NJSIAA rules and regulations while officiating. Officials wear a uniform prescribed by NJSIAA, which identifies them as NJSIAA officials. It follows from the foregoing that at this preliminary stage, we accept Covington's claim that NJSIAA is liable as an employer for post-season games.

Our examination of Covington's allegations related to CVC shows no similar relationship. CVC does not pay officials and does not contribute to their training or evaluation. Therefore, we reject Covington's allegation that CVC is liable as her employer under Title VII.

Looking to the final principal defendant, Board 193, Covington argues that it fits within the definition of an employment agency. An "employment agency" is defined under Title VII as "any person regularly undertaking with or without compensation to procure

11

employees for an employer or to procure for employees opportunities to work for an employer and includes an agent of such a person." §2000e(c). Board 193 does not deny that it comes within the Title VII definition of employment agency. However, it states that it cannot be liable because to be liable as an employment agency, there has to be an employment relationship between Covington and Hamilton. As stated above, Covington has adequately pled an employment relationship with Hamilton. Therefore, Board 193 is liable as an employment agency. In summary, Covington has plausibly alleged an employment relationship with Hamilton for regular season games, with NJSIAA for post-season games, and with Board 193 as an employment agency.

Covington asserts that NJSIAA, IAABO, and CVC are vicariously liable for the asserted Title VII violations. "'An agency relationship is created when one party consents to have another act on its behalf, with the principal controlling and directing the acts of the agent.'" *AT& T Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1434 (3d Cir. 1994) (quoting *Sears Mortg. Corp. v. Rose*, 634 A.2d 74, 79 (N.J. 1993)). Vicarious liability due to an agency relationship can be based on the agent's actual authority. "An agent acts with actual authority when, at the time of taking action that has legal consequences for the principal, the agent reasonably believes, in accordance with the principal's manifestations to the agent, that the principal wishes the agent so to act." Restatement (Third) of Agency § 2.01

(2006).  Vicarious liability can also be based on apparent authority.  "'Apparent authority arises in those situations where the principal causes persons with whom the agent deals to reasonably believe that the agent has authority' despite the absence of an actual agency relationship." *Winback*, 42 F.3d at 1439 (quoting *Barticheck v. Fidelity Union Bank/First Nat'l State*, 680 F. Supp. 144, 148-49 (D.N.J. 1988)).

Board 193 is a chapter of NJSIAA.  NJSIAA provides training and evaluation requirements for Board 193 officials, and requires them to attend certain meetings, at which NJSIAA rules are reviewed.  Covington has shown that NJSIAA has some control, particularly in training and evaluation, of the basketball officials.  However, we see nothing to support Covington's allegation that NJSIAA is vicariously liable for Board 193's actions.

Covington also alleges that IAABO is a principal of Board 193.  IAABO, which is a worldwide organization, provides curricula and training materials for basketball officials.  IAABO retains some authority to discipline Board 193 members.  We gave Covington the opportunity to explain IAABO's connection with this action but, from the information provided, it appears that it has no connection with the assignment of officials to games.  IAABO does not have sufficient control over Board 193 so as to be its principal.  We therefore have no basis to hold IAABO liable.

Finally, Covington states there is an agency relationship between CVC and Hamilton. However, she does not adequately allege that CVC has control over Hamilton so as to be vicariously liable.[6]

## III.

For the reasons set forth, we will remand this matter to the District Court to give Covington an opportunity to provide more facts as to her claim against Hamilton, Board 193, and NJSIAA. We will affirm the District Court's dismissal of Covington's claim against the CVC and IAABO.

---

[6] Although Covington supplemented her allegations with respect to Title IX alleging Hamilton's receipt of federal funds, her Title IX claim is inadequate because she does not allege an official policy of discrimination at Hamilton and does not allege that an individual with authority to address the discrimination had actual knowledge of the discrimination. *See Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998).