**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 14-1842
_____

YUE YU,

Appellant

v.

HOLLY MCGRATH; BRISTOL-MYERS SQUIBB
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil Action No. 3-11-cv-05446)
District Judge:  Honorable Peter G. Sheridan

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
December 23, 2014

Before:  CHAGARES, JORDAN and GARTH, Circuit Judges

(Opinion filed December 30, 2014)

_____

OPINION[*]
_____

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

PER CURIAM

Yue Yu appeals from an order of the United States District Court for the District of New Jersey, which granted the Defendants' summary judgment motion. We will affirm the District Court's judgment.

I.

In 2009, Defendant Bristol-Myers Squibb ("BMS") needed a marketing research consultant to manage three projects. Defendant Holly McGrath, who was Director of Global Oncology Marketing Research at BMS at the time, contacted GfK Healthcare, LP ("GfK") for help in locating a consultant. GfK in turn contacted a staffing agency, Scientific Search, who identified Yu as a suitable candidate. After Yu interviewed with Robert Delghiaccio of GfK and with McGrath and others at BMS, BMS contracted with GfK for Yu's consulting services. GfK entered into contracts with Scientific Search and with Yu, stating that Yu would provide consulting services to BMS and report to McGrath. The contract was to run from September 21, 2009, through March 31, 2010, with the potential of an extension through the end of 2010. Either party was also allowed to cancel the contract before March 31, 2010, with thirty days' notice. Scientific Search had a separate contract with Great & Guangda Enterprise, Inc. ("G&G"), a company of which Yu was president, indicating that Scientific Search would pay G&G for Yu's services to BMS, upon receipt of invoices from G&G. In short, according to Yu, "BMS paid $190 per hour to GfK for [Yu's] work at BMS, . . . GfK paid $139 per hour to Scientific Search, [and] Scientific Search paid $90 per hour to [G&G]." (Dist. Ct. Op. at

2

5, quoting from Plaintiff's Statement of Facts at ¶ 17).

While Yu received some very positive comments about her work, see, e.g., Dkt. 32-5 at PageID 951, McGrath also received a number of complaints about Yu's work, see, e.g., Dkt. 27-4 at PageID 251-52, 284-86, Dkt. 27-5 at PageID 426-29, 451-53. McGrath conveyed to Delghiaccio her dissatisfaction and her colleagues' dissatisfaction with Yu's work on at least five occasions. Dkt. 27-5 at PageID 438, Dkt. 27-6 at PageID 484, 492, 497, and 499. Delghiaccio offered to intervene on at least three occasions. Dkt. 27-5 at PageID 442, Dkt. 27-6 at PageID 484, 492.

In January 2010, BMS announced that it was creating a new full-time position for Associate Director, Global Oncology Marketing Research. Yu mentioned to Delghiaccio that she was interested in the position, but Delghiaccio informed her that BMS was planning to terminate her assignment because of poor performance. Nonetheless, Yu indicated to McGrath that she was interested in applying for the position. On March 4, 2010, McGrath explained to Yu that it would not make sense for her to apply, as the interview panel was made up of the same people who had voiced dissatisfaction with her performance. Yu alleges that she asked McGrath "whether being Chinese is a factor of her decision not to consider [her] application," and that in response, "McGrath didn't deny verbally and her body language confirmed the discrimination is a factor." Dkt. 32-2 at PageID 711. Yu did not appear for work on March 24, 2010. McGrath contacted Jim

3

Jenkins at Scientific Search (Delghiaccio was out of town), and the two decided that since the contract was almost over, Yu's placement would be terminated immediately.[1]

Yu filed a charge of race and national origin discrimination with the EEOC, and later filed the complaint at issue here. Yu's amended complaint raised claims pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. ("Title VII"), 42 U.S.C. § 1981, the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, et seq., and New Jersey law. The District Court granted the Defendants' motion for summary judgment and declined to exercise supplemental jurisdiction over Yu's state law claims. Yu timely appealed.

## II.

We have appellate jurisdiction pursuant to 28 U.S.C. § 1291. We review a district court's grant of summary judgment de novo. Lamont v. New Jersey, 637 F.3d 177, 181 (3d Cir. 2011). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). This determination requires that we view the facts in the light most favorable to the nonmovant and draw all inferences in her favor. Stratechuk v. Bd. of Educ., S. Orange-Maplewood Sch. Dist., 587 F.3d 597, 603 (3d Cir. 2009). We may affirm a district court for any reason supported by the record. Brightwell v. Lehman, 637 F.3d 187, 191 (3d Cir. 2011).

## A.

---

[1] Scientific Search nevertheless paid G&G for Yu's services through March 31, 2010.

4

We turn first to Yu's FLSA claim. Yu's amended complaint stated that BMS "never compensated [her] for overtime," and that it "misclassif[ied her] as an independent contractor." Dkt. 15, ¶¶ 24, 85. BMS argues that Yu was never an "employee" of BMS, and was thus not covered by the FLSA's overtime provisions, see 29 U.S.C. § 207(a). We agree with BMS.

The FLSA defines "employee" as "any individual employed by an employer," 29 U.S.C. § 203(e)(1), and the statute defines "employ" with "striking breadth." Nationwide Mut. Ins. Co. v. Darden, 503 U.S. 318, 326 (1992); 29 U.S.C. § 203(g) ("'Employ' includes to suffer or permit to work."). Courts consider the "economic reality rather than technical concepts" when determining whether the FLSA applies. In re Enterprise Rent-A-Car Wage & Hour Emp't Practices Litig., 683 F.3d 462, 467 (3d Cir. 2012) (quoting Goldberg v. Whitaker House Co-op, Inc., 366 U.S. 28, 33 (1961)). The factors to be considered include:

> 1) the alleged employer's authority to hire and fire the relevant employees;
> 2) the alleged employer's authority to promulgate work rules and assignments and to set the employees' conditions of employment: compensation, benefits, and work schedules, including the rate and method of payment; 3) the alleged employer's involvement in day-to-day employee supervision, including employee discipline; and 4) the alleged employer's actual control of employee records, such as payroll, insurance, or taxes.

Id. at 469-70.

Even given the breadth of the statute's definitions, and construing the facts in the light most favorable to Yu, we agree with the District Court that "no reasonable jury could conclude that [she] was an employee of BMS." Dist. Ct. Op. at 24. The second

5

and third factors weigh in favor of finding an employment relationship, to some extent: BMS had some discretion in determining the assignments that Yu would work on, and provided Yu with office space and equipment during the contract period; BMS also had involvement in Yu's day-to-day supervision (McGrath oversaw the projects to which Yu was assigned, Yu submitted her timesheets to McGrath for approval, and Yu attended marketing team meetings for her projects). But BMS did not set Yu's compensation, benefits, or rate and method of payment; those terms were covered by a contract between G&G and Scientific Search. And to some extent, BMS ceded its supervision of Yu to GfK--when BMS had issues with Yu's performance, McGrath discussed them with Delghiaccio of GfK, who in turn worked with Yu to improve her performance. Thus, even factors two and three do not weigh totally in Yu's favor. And the other factors weigh against her. BMS did not have the authority to hire or fire Yu; it could only decide to work with her during the period of the contract or decide to terminate the contract. Further, BMS had no control over payroll, insurance, or tax records for Yu. We conclude that the District Court properly found no employment relationship between BMS and Yu for purposes of the FLSA.

B.

We turn next to Yu's claims under Title VII, which prohibits discriminatory employment practices based upon an individual's "race . . . or national origin." 42 U.S.C. § 2000e-2(a)(1). To the extent Yu is claiming discrimination while working at BMS, she lacks standing to bring such a claim, because if BMS was not her employer under the

6

FLSA's more expansive definition, it follows that BMS was not her employer under the narrower common law definition used for Title VII cases. See Covington v. Int'l Ass'n of Approved Basketball Officials, 710 F.3d 114, 119 (3d Cir. 2013) (to state a Title VII claim, plaintiff must allege employment relationship with defendants under common law test); see also Nationwide Mut. Ins. Co. v. Darden, 503 U.S. 318, 323-24, 326 (1992) (listing factors to be considered in determining whether entity is an employer under common law test and recognizing that FLSA's definition of "employ" is more expansive than common law test).[2]

Nevertheless, Yu has standing to claim that BMS, as a *potential* employer, violated Title VII when it failed to hire her for the permanent market research position. See, e.g., McDonnell Douglas Corp. v. Green, 411 U.S. 792, 796 (1973). Courts use a burden-shifting framework to analyze a plaintiff's claim that an organization failed to hire her because of her race or national origin. Id. at 802. Although we are doubtful that Yu satisfied McDonnell Douglas's requirement that she make out a prima facie case of discrimination, we will assume for the sake of argument, as did the Defendants and the District Court, that she has done so. But we agree with the District Court that there was no triable issue because Yu did not offer evidence showing that BMS's reason for failing to hire her—her poor performance—was a pretext for discrimination. Tex. Dep't of

---

[2] Yu's claim pursuant to 42 U.S.C. § 1981 would not be similarly barred by her independent contractor status. See Brown v. J. Kaz, Inc., 581 F.3d 175, 181 (3d Cir. 2009). However, she has waived any claim based on § 1981 because she has not raised the claim in her opening brief. See United States v. DeMichael, 461 F.3d 414, 417 (3d Cir. 2006) ("An issue is waived unless a party raises it in its opening brief, and for those purposes a passing reference to an issue will not suffice to bring that issue before this court." (citation omitted)).

Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981) (if plaintiff establishes prima facie case of discrimination, burden shifts to employer to articulate legitimate nondiscriminatory reason for its actions; plaintiff must then show that those reasons are a pretext for discrimination).

To survive a motion for summary judgment, a plaintiff may prevail by pointing to evidence either discrediting the employer's proffered reasons or by showing that discrimination was more likely than not a motivating or determinative cause of the adverse employment action. See Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994). Yu attempts to show that McGrath's evaluation of her work was mistaken, by pointing to a few emails that praised her work. But:

> To discredit the employer's proffered reason . . . the plaintiff cannot simply show that the employer's decision was wrong or mistaken . . . . Rather, the non-moving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them "unworthy of credence."

Id. at 765. Yu cannot refute the fact that a number of people complained to McGrath about the quality of her work, and Yu's subjective valuation of her own work is not enough to overcome summary judgment. See Stephens v. Erickson, 569 F.3d 779, 788 (7th Cir. 2009) (plaintiff must offer more than subjective belief that he was as qualified as successful applicant).

Further, Yu has not shown that a discriminatory reason was more likely than not a motivating cause in BMS's failure to hire her. Yu's only evidence of discrimination is her subjective belief that McGrath's body language communicated a discriminatory

8

intent. This is not sufficient to overcome summary judgment. Cf. Adamson v. Multi Cmty Diversified Servs, Inc., 514 F.3d 1136, 1151 (10th Cir. 2008) (employee's subjective belief in invidious nature of isolated and ambiguous comment does not support inference of discrimination). The District Court reasoned, and we agree, that Yu did not offer any evidence showing weakness or implausibility in BMS's proffered reason for failing to hire her such that a reasonable jury could find in her favor.

To the extent that Yu alleged she was not hired as retaliation for filing a charge of discrimination with the EEOC, we agree with the District Court that Yu did not establish a prima facie case. To advance a prima facie case of retaliation, a plaintiff must show that: "(1) [she] engaged in a protected employee activity; (2) the employer took an adverse employment action after or contemporaneous with the protected activity; and (3) a causal link exists between the employee's protected activity and the employer's adverse action." Abramson v. William Paterson Coll. of N.J., 260 F.3d 265, 286 (3d Cir. 2001). As the District Court described, Yu's charge of discrimination was filed with the EEOC after BMC had made its hiring decision, and there was no evidence that BMS officials in charge of hiring knew about the discrimination charge before making the hiring decision. To the extent Yu claimed that she was retaliated against for inquiring about the permanent position, such inquiry is not "protected activity." "With respect to 'protected activity,' the anti-retaliation provision of Title VII protects [(1)] those who participate in certain Title VII proceedings . . . and [(2)] those who oppose discrimination made unlawful by Title VII." Moore v. City of Phila., 461 F.3d 331, 341 (3d Cir. 2006).

9

Inquiring about and/or applying for a job does not fit into either one of these categories. Consequently, Yu did not establish an adverse employment action taken after or contemporaneous with a protected activity, nor did she establish a causal link between the protected activity and the adverse action.

C.

Finally, we conclude that the District Court did not err in declining to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) over the remaining state and common law claims. "In enacting section 1367, Congress intended to enhance a district court's ability to gain jurisdiction over pendent claims and parties while providing those courts with the discretion to decline to exercise supplemental jurisdiction in several express circumstances." De Asencio v. Tyson Foods, Inc., 342 F.3d 301, 308 (3d Cir. 2003). Importantly, pendent jurisdiction is a doctrine of discretion, not a plaintiff's right. See id. (citing United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966)). A district court may decline to exercise supplemental jurisdiction where it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Here, the District Court dismissed all of the remaining state and common law claims after awarding summary judgment to Defendants on all of the federal claims over which it had original jurisdiction. It was within the District Court's discretion to do so, and Yu's conclusory statement that these claims "are entitled to be considered" does not convince us that the Court abused its discretion.

III.

10

For the foregoing reasons, we will affirm the District Court's judgment. The Appellees' motion to file a supplemental appendix is granted.