**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 24-1679

———————

EVA MIGLIORE, by her friend Joseph Migliore,

Appellant

v.

VISION SOLAR LLC; VISION SOLAR NJ LLC; JON
SEIBERT; SUNLIGHT FINANCIAL LLC; CROSS RIVER
BANK

———————

Appeal from the United States District Court
for the District of New Jersey
(District Court No. 1:23-cv-02623)
District Judge: Honorable Christine P. O'Hearn

———————

Argued on September 16, 2025

Before: BIBAS, MONTGOMERY-REEVES, and AMBRO,
*Circuit Judges*

(Opinion filed: October 22, 2025)

Cary L. Flitter
Flitter Milz
450 N Narberth Avenue
Suite 101
Narberth, PA 19072

Jody T. Lopez-Jacobs
Andrew M. Milz **(Argued)**
Flitter Milz
1814 E Route 70
Suite 350
Cherry Hill, NJ 08003

Counsel for Appellant

Kathryn M. Barber **(Argued)**
McGuireWoods
800 E Canal Street
Gateway Plaza
Richmond, VA 23219

Hannah K. Caison
McGuireWoods
201 N Tryon Street
Suite 3000
Charlotte, NC 28202

Jonathan Y. Ellis
McGuireWoods
501 Fayetteville Street
Suite 500
Raleigh, NC 27601

> Counsel for Appellees Sunlight Financial, LLC; Cross River Bank

---

OPINION OF THE COURT

---

AMBRO, *Circuit Judge*

A door-to-door salesman offered senior citizen Eva Migliore "free" rooftop solar panels for her home in New Jersey. They weren't free. Soon, her son discovered she owed nearly $100,000 to lenders who claimed she took out a loan to finance the panels. Migliore sued the salesman's company, its CEO, and the lenders for defrauding her. The District Court dismissed her claims against the lenders, primarily because she failed plausibly to allege the salesman was acting on their behalf. As sympathetic as this case is, we must affirm.

## I. BACKGROUND

These are the facts as Migliore alleges them. Sunlight Financial LLC and Cross River Bank (the "lenders") finance home solar energy systems. Sunlight operates a financial services platform that enables homeowners to finance home improvements with loans originated by third-party lenders like Cross River. Sunlight and Cross River work with Vision Solar, which markets home solar systems, pitches customers on the

lenders' financing options, and then designs, makes, installs, and services the panels. Vision Solar comprises two entities: Vision Solar, LLC and Vision Solar NJ, LLC (collectively "Vision Solar," unless otherwise indicated). Jon Seibert is the CEO of each. The relationship between the lenders and Vision Solar is governed by a contract called the Financing Program Agreement ("FPA").

In October 2022, a Vision Solar sales representative came to Migliore's door and offered her free solar panels. She hesitated. But when the salesman pressed her, Migliore accepted the offer. The salesman never mentioned, showed, or asked her to sign any paperwork. During or shortly after the visit, the lenders obtained her consumer credit reports.

A few months later, Vision Solar installed the panels and called Migliore to turn them on. It was then her son, Joseph, learned about the panels and demanded to see documentation. Vision Solar informed him it had sent the documents to the wrong email address because of a "clerical error." Instead of sending them to her email address, which includes her last name, "Migliore," it had emailed them to a slightly different one, misspelling her last name as "Migilore." Once Vision Solar sent Migliore and her son the documents, they learned the terms for the first time.

What they read stunned them: a sales agreement purporting to obligate Migliore to pay Vision Solar for the panels; a document styled as a "Power of Attorney," purporting to authorize Vision Solar to apply for credit on her behalf; and a 25-year loan agreement, listing Sunlight Financial as the "Envelope Originator," purporting to obligate Migliore to pay Cross River Bank $99,749.82 for financing the purchase. All were digitally signed and initialed in her name, even though

4

she had never seen any of them before. Migliore and her son soon realized what had happened: the salesman made a fake email address, sent the documents there, and forged her signature.[1]

Making matters worse, the solar panels were no use to Migliore. Her house is shaded by trees. And her roof failed inspection.

Understandably, Migliore had no interest in paying nearly $100,000 for solar panels she did not buy and could not use, so she tried to cancel. Less understandably, the companies refused.

Migliore turned to litigation. In May 2023, she sued the Vision Solar entities, Seibert, Sunlight, and Cross River in the U.S. District Court for the District of New Jersey for violating federal and New Jersey law. As relevant here, she sued Sunlight and Cross River for violating the New Jersey Consumer Fraud Act ("Consumer Fraud Act"), N.J. STAT. ANN. § 56:8-1 *et seq.*, directly and through Vision Solar's salesman, and for violating directly a provision of the Fair Credit Reporting Act ("Credit Reporting Act"), 15 U.S.C. § 1681b(f).

Seibert and the Vision Solar entities moved to dismiss the complaint. Sunlight and Cross River did the same. Then Vision Solar, LLC filed for bankruptcy, so the District Court terminated it from the action. In March 2024, the Court granted Sunlight and Cross River's motion to dismiss without

---

[1] Migliore's experience seems to reflect a pattern of misconduct by Vision Solar. *See* App. 97–98 (describing the Connecticut Attorney General's allegations that Vision Solar regularly commits similar abuses).

prejudice. It also granted Vision Solar's motion to dismiss, but only in part, allowing some of the claims against Seibert and Vision Solar NJ, LLC to proceed. Migliore then voluntarily dismissed her surviving claims against Seibert and Vision Solar NJ, LLC. She appeals the dismissal of her claims against the lenders.

## II. JURISDICTION AND STANDARD OF REVIEW

The District Court had federal question jurisdiction over the Credit Reporting Act claim, 28 U.S.C. § 1331; 15 U.S.C. § 1681p, and supplemental jurisdiction over the related state-law claims, 28 U.S.C. § 1367.

We have jurisdiction over this appeal under 28 U.S.C. § 1291. It confers "jurisdiction of appeals from all final decisions of the district courts of the United States." 28 U.S.C. § 1291. "[A] dismissal without prejudice and with leave to amend isn't a final order." *Weber v. McGrogan*, 939 F.3d 232, 237 (3d Cir. 2019). However, "a clear and unequivocal intent to decline amendment and immediately appeal that leaves no doubt or ambiguity can allow us to exercise jurisdiction." *Id.* at 240. Under the "stand on the complaint" doctrine, "the mere *intent* to forego further amendment [can] satisfy finality" without the need to "seek[] and receiv[e] a final order" from a district court. *Id.* at 238.

That is what we have here. The District Court dismissed Migliore's claims against Sunlight Financial and Cross River Bank without prejudice. Then Migliore filed a "Notice of Intent to Stand on [the] Second Amended Complaint," declining the opportunity to amend. App. 165. The District Court dismissed the claims against Vision Solar NJ, LLC and Seibert following Migliore's voluntary dismissal. And Migliore notified us that she formally abandons her claims against the bankrupt Vision

6

Solar, LLC. "That representation suffices to convert the District Court's ruling into a final decision appealable under § 1291." *Dzielak v. Whirlpool Corp.*, 83 F.4th 244, 259 (3d Cir. 2023). Because its order now counts as final, we have jurisdiction.

With that jurisdiction, we review *de novo* the grant of a Rule 12(b)(6) motion to dismiss. *Falcone v. Dickstein*, 92 F.4th 193, 202 (3d Cir. 2024). Like the District Court, we ask whether the complaint states a claim for relief, taking all factual allegations as true, disregarding legal conclusions, and drawing all reasonable inferences in the plaintiff's favor. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013) (*en banc*).

### III. DISCUSSION

Migliore claims Sunlight Financial and Cross River Bank violated the state Consumer Fraud Act, N.J. STAT. ANN. § 56:8-1 *et seq.*, and the federal Credit Reporting Act, 15 U.S.C. § 1681b(f). Her primary theory is that Vision Solar's salesman acted as the lenders' agent, defrauding her on their behalf. Accordingly, we first consider vicarious liability, then consider direct liability.

**A. Migliore failed to plead that Sunlight Financial and Cross River Bank are vicariously liable under the New Jersey Consumer Fraud Act for the actions of Vision Solar's sales representative.**

New Jersey's Consumer Fraud Act was "designed to combat sharp practices and dealings that victimized consumers by luring them into purchases through fraudulent or deceptive means." *Cox v. Sears Roebuck & Co.*, 647 A.2d 454, 461 (N.J. 1994) (quotation omitted). To state a claim under it, a plaintiff

7

must plausibly allege "1) unlawful conduct by defendant; 2) an ascertainable loss by plaintiff; and 3) a causal relationship between the unlawful conduct and the ascertainable loss." *Bosland v. Warnock Dodge, Inc.*, 964 A.2d 741, 749 (N.J. 2009).

Migliore claims the lenders are vicariously liable for Vision Solar's sales representative's violations of the statute. Generally, we are liable only for our own actions. Sometimes, however, a principal is liable for its agent's conduct. *Am. Tel. & Tel. Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1437 (3d Cir. 1994). Vicarious (acting for another) liability mitigates "the injustice in allowing a principal to place agents in the marketplace, to allow the agents to complete contracts on the principal's behalf, to profit from the agents' misrepresentations, and then to disclaim liability for the agents' actions while benefitting from the fraud." *Id.* at 1438.

Before we turn to the merits, we clarify the pleading standard. Migliore argues agency allegations need not satisfy the ordinary standard for surviving a Rule 12(b)(6) motion to dismiss. She relies on our nonprecedential opinion in *Jurimex Kommerz Transit G.M.B.H. v. Case Corporation*, which said "discovery is necessary when an agency relationship is alleged, thereby implicitly allowing allegations of agency to survive a facial attack." 65 F. App'x 803, 808 (3d Cir. 2003).

Her reliance on *Jurimex* is misplaced. The case predicated this proposition on the generous pleading standard of its day—the standard of *Conley v. Gibson*, 355 U.S. 41 (1957)—under which "a complaint may be dismissed 'only if it is certain that no relief could be granted under any set of facts which could be proven.'" *Id.* (quoting *Rossman v. Fleet Bank (RI) Nat'l Assoc.*, 280 F.3d 384, 387 (3d Cir. 2002)). The Supreme Court has overruled this standard. *See Bell Atl. Corp.*

8

*v. Twombly*, 550 U.S. 544, 560–63 (2007) (concluding the "no set of facts" standard is "best forgotten"); *Iqbal*, 556 U.S. at 670 ("*Twombly* retired the *Conley* no-set-of-facts test[.]"); *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 230–32 (3d Cir. 2008) (holding *Twombly* "disavowed . . . the 'no set of facts' language").

Today, to survive a motion to dismiss, a plaintiff must allege facts sufficient to make it "plausible" the defendant is liable. *Doe v. Univ. of Scis.*, 961 F.3d 203, 208 (3d Cir. 2020). So to claim a defendant is vicariously liable, a plaintiff must allege facts sufficient to make it plausible the primary wrongdoer was the defendant's agent. *See Phillips*, 515 F.3d at 234 (holding complaint must contain "enough factual matter (taken as true) to suggest the required element[s]" of each claim) (quotation omitted); *Covington v. Int'l Ass'n of Approved Basketball Offs.*, 710 F.3d 114, 117–18 (3d Cir. 2013) (subjecting vicarious liability claims to *Twombly* and *Iqbal* standard). There is no agency exception to the plausible-pleading requirement.

We turn, then, to agency. "An agency relationship is created when one party consents to have another act on its behalf, with the principal controlling and directing the acts of the agent." *Covington*, 710 F.3d at 120 (quoting *Winback*, 42 F.3d at 1434). Agents are fiduciaries for their principals. *See Winback*, 42 F.3d at 1439 (quoting Restatement (Second) of Agency § 14N, cmt. b); *Kaye v. Rosefielde*, 121 A.3d 862, 869 (N.J. 2015).

Under New Jersey law, there are two types of agents: employees and some independent contractors. *Winback*, 42 F.3d at 1434–35. Employees are agents subject to their employer's control over the time, manner, and method of work. *Id.* at 1435. Independent contractors are agents only when

9

subject to their principal's "general control and direction," particularly as to the results of the work. *Id.* Independent contractors who are not subject to their principal's control are not agents. *Id.*

In *Winback*, we identified several indicia for when a sales representative is an agent. *See id.* at 1438–39. First, the sales representative is empowered "to conduct and conclude" transactions for the principal. *Id.* at 1438 & 1439 n.19. Second, "the representative is empowered to speak as the principal," *id.* at 1439 n.19, or to "hold [himself] out as the principal itself," *id.* at 1438. Third, the principal "exercise[s] control over how its company is represented to third parties." *Id.* at 1439 n.19. And fourth, "the principal benefits financially from the contracts." *Id.* at 1438. No matter what, only a sales representative who is a fiduciary for the principal is an agent of the principal. *See id.* at 1439.

Migliore has plausibly alleged Vision Solar's salesman met two of these criteria. She alleges that he financially benefitted the lenders by marketing their offerings to new borrowers. And she claims the lenders exercised some control over how the sales representative portrayed them. But from there, she falters.

Migliore has not plausibly alleged the sales representative could "conduct and conclude" sales for the lenders or "bind the[m] in contracts." *See Winback*, 42 F.3d at 1438, 1439 n.19. Nowhere does she allege the salesman could approve a loan application, issue a loan, or make any binding agreement on their behalf. In fact, the FPA provides that Sunlight and originators like Cross River set the borrowing criteria, accept applications directly through their online platform, decide whether to approve applicants for credit, communicate those decisions, and convey the documentation

10

to the applicants for execution. Her conclusory allegations that the sales representative had the power to transact for the lenders, *see, e.g.*, App. 86, cannot surmount the FPA's direct specifications to the contrary. *See Vorchheimer v. Philadelphian Owners Ass'n*, 903 F.3d 100, 111–12 (3d Cir. 2018).

Migliore has not plausibly alleged Sunlight and Cross River authorized Vision Solar's sales representative to hold himself out as acting for the lenders. *See Winback*, 42 F.3d at 1438, 1439 n.19, 1440 n.20. The FPA mandates Vision Solar, LLC market the panels to potential customers under its own name, not Sunlight's. It directs Vision Solar to use Sunlight's name where, but only where, required by law or necessary to prevent applicants from confusion about who originates or owns the loans. And the FPA restricts Vision Solar's use of Sunlight's and its lenders' trademarks.

Nor has Migliore plausibly alleged Vision Solar's sales representative was a fiduciary for Sunlight Financial or Cross River Bank. "A fiduciary relationship arises between two persons when one person is under a duty to act for or give advice for the benefit of another on matters within the scope of their relationship." *F.G. v. MacDonell*, 696 A.2d 697, 704 (N.J. 1997) (citing Restatement (Second) of Torts § 874 cmt. a (1979)). "When a company agrees to render a service or sell a product, a contract normally will define the scope of the parties' specific obligations." *Saltiel v. GSI Consultants, Inc.*, 788 A.2d 268, 280 (N.J. 2002). Accordingly, "fiduciary duties are not imposed in ordinary commercial business transactions" governed by contracts. *Alexander v. CIGNA Corp.*, 991 F. Supp. 427, 438 (D.N.J. 1998), *aff'd*, 172 F.3d 859 (3d Cir. 1998) (Table). In this context, courts typically find "[t]he scope of [an independent contractor's] legal obligations to the

11

[principal] was defined by its express contractual undertaking." *See Pepe v. Twp. of Plainsboro*, 766 A.2d 837, 842 (N.J. Super. Ct. App. Div. 2001). Beyond conclusory allegations that Vision Solar's salesman acted for the benefit of the lenders, Migliore does not allege any facts from outside the FPA that would speak to a fiduciary relationship. And nothing in it purports to produce one. In fact, the FPA expressly disclaims creating any form of agency relationship. App. 134. Of course, contractual disclaimers of agency are not dispositive. *Henningsen v. Bloomfield Motors, Inc.*, 161 A.2d 69, 78–79 (N.J. 1960). What matters most is the course of the relationship. *Sears Mortg. Corp. v. Rose*, 634 A.2d 74, 79 (N.J. 1993). But the FPA does not advance Migliore's case.

Migliore insists Sunlight Financial and Cross River Bank exercised enough control over Vision Solar's sales representative to render him their agent despite these defects. Yet she has not plausibly alleged they did.

She points to the lenders' authority to mandate that sales representatives participate in training sessions on sales, marketing, and compliance, and to terminate any third-party sales organizations to which Vision Solar delegated responsibilities. However, we have held the powers to train, evaluate, and discipline independent contractors, without more, do not establish sufficient control for vicarious liability. *See Covington*, 710 F.3d at 120.

Migliore also asks us to infer control from the facts the lenders required sales representatives to use Sunlight's lending technology, set specific terms and conditions for sales, and reviewed the products on offer, the methods of presenting them, and the contract documents. But none of these allegations plug the three glaring gaps in her case. They do not suggest the sales representative could "conclude transactions"

12

for the lenders. *See Winback*, 42 F.3d at 1438, 1439 n.19. They do not suggest he could speak as the lenders. *See id.* And they do not suggest he was a fiduciary for the lenders. *See id.* at 1439. As a result, they are not enough to make it plausible he was their agent.

At oral argument, Migliore pressed us to hold Sunlight liable for the salesman's forgery because the firm supplied the technology he used to perpetrate it: a lending platform that enables homeowners to apply for loans with digital contracts affixed with digital signatures. By providing the means, she argued, Sunlight assumed responsibility for the salesman's fraudulent ends. We reject this bid to expand vicarious liability. Because the "touchstone of an agency relationship" is "the right to control," what matters is not whether the principal provided the contractor the means, but whether the principal could control how the contractor used them. *See Gov't of V.I. v. Richards*, 618 F.2d 242, 244 (3d Cir. 1980). *See also I.H. ex rel. Litz v. Cnty. of Lehigh*, 610 F.3d 797, 811–12 (3d Cir. 2010). Migliore has not shown the lenders had that power.

To shore up her position, Migliore cites two cases finding agency relationships under roughly comparable circumstances. Neither persuades us. In *Lopez v. New Jersey Sun Tech, LLC*, a Pennsylvania homeowner sued none other than Sunlight Financial for a similar solar panel sale through a different sales organization. 3:24-CV-01354, 2025 WL 260326, at *1 (M.D. Pa. Jan. 21, 2025). The court held the plaintiff plausibly alleged the sales representative was Sunlight's agent. *Id.* at *8. But it let the complainant off easy, applying the *Jurimex* rule "allowing allegations of agency to

13

survive a facial attack." *See id.* at \*8 (quoting *Jurimex*, 65 F. App'x at 808). That was a mistake.

The other case, *Acevedo v. Sunnova Energy Corporation*, concerned a significantly different contract under California law. 738 F. Supp. 3d 1268 (C.D. Cal. 2024). There, the plaintiff alleged that Sunnova, the defendant lender, required the sales agents to register with a state labor board as the lender's employees. *Id.* at 1277. The plaintiff also alleged the sales representatives could apply for loans on behalf of their customers. *Id.* at 1274. Here, by contrast, Migliore does not allege Vision Solar's sales representatives are the lenders' employees in any sense. And she does not allege the lenders authorized the sales representatives to apply for loans for potential borrowers. These distinctions draw the California lender closer to the California sales representatives than Sunlight Financial and Cross River Bank are to Vision Solar's salesman, showing greater control by Sunnova and greater authority to transact by its sales representative.

Migliore thus failed plausibly to allege Vision Solar's sales representative was an agent of Sunlight Financial or Cross River Bank. Consequently, she does not adequately plead the lenders are vicariously liable for his violations of the Consumer Fraud Act.

**B. Migliore failed to plead that Sunlight Financial and Cross River Bank are directly liable for violating the New Jersey Consumer Fraud Act.**

Agency aside, Migliore claims Sunlight Financial and Cross River Bank are directly liable for violating two provisions of New Jersey's Consumer Fraud Act, §§ 56:8-2 and 56:8-2.22. Section 56:8-2 prohibits "unconscionable" commercial practices, as well as "deception, fraud . . . or the knowing . . . concealment, suppression, or omission of any

14

material fact." N.J. STAT. ANN. § 56:8-2. Section 56:8-2.22 makes it unlawful "to require or request [a] consumer to sign any document as evidence . . . of [a] sales transaction . . . unless [one] shall at the same time provide the consumer with a full and accurate copy of the document." N.J. STAT. ANN. § 56:8-2.22.

Consumer Fraud Act claims are subject to Federal Rule of Civil Procedure 9(b). *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007). It requires pleading fraud with particularity. "Under that standard, the complaint must describe the time, place, and contents of the false representations or omissions, as well as the identity of the person making the statement and the basis for the statement's falsity." *City of Warren Police and Fire Ret. Sys. v. Prudential Fin.*, 70 F.4th 668, 680 (3d Cir. 2023).

The District Court correctly concluded Migliore's allegations lack the particularity Rule 9(b) requires. First, she claims "Sunlight's deceptive conduct and misrepresentations, including with respect to its role in obligating Plaintiff to the 25-Year Loan," were unconscionable in violation of § 56:8-2. App. 100. These allegations do not identify the deceptive conduct or the content of the alleged misrepresentations. *See City of Warren*, 70 F.4th at 680.

Second, Migliore claims she pled a violation of § 56:8-2 by alleging Sunlight Financial and Cross River Bank deliberately sent the loan agreement to the wrong email address. However, her argument implicitly relies on the agency theory we have rejected already. Her only relevant, non-conclusory allegations attribute the failure to send her the contract to the sales representative's creation of a fake email address and his decision to send the contract to that address. Because Migliore failed to plead the sales representative acted

15

as the lenders' agent, she cannot, without more, hold them liable for his diversion of the contract.

Third, Migliore claims the lender defendants' "failure to provide [her] the 25-Year Loan" and sales agreement violated § 56:8-2.22. App. 100. The District Court correctly determined she failed to state a claim because she alleged conduct this provision does not cover. In essence, § 56:8-2.22 bars requesting or demanding a consumer sign an agreement without providing that person a copy. But Migliore alleges Sunlight Financial and Cross River Bank never asked her to sign the contract, much less required her to sign it to prove the loan. To the contrary: it was sent to the wrong email address so she would not have the chance to sign it herself.

Even assuming the defendants requested she sign the agreement, Migliore's claim would fail for two independent reasons. First, she did not plead with particularity which defendant (or defendants) made this request. Although she alleges the agreement assigns roles to Sunlight Financial and Cross River Bank, she does not specify which entity requested her signature (if either). The most relevant allegation says merely that "Defendants requested [Migliore] sign the 25-Year Loan by causing the document to be emailed to [her] at the incorrect email address, through which the 25-Year Loan was signed." App. 92. In a case with five defendants, the word "Defendants" does not provide "the identity of the person" who allegedly wronged her. *See Frederico*, 507 F.3d at 201 (holding plaintiff's failure to identify which specific individual employed by defendant made the false remark sank claim under Rule 9(b)). *See also Inst. Invs. Grp. v. Avaya*, 564 F.3d 242, 253 (3d Cir. 2009) (holding Rule 9(b) "requires plaintiffs to plead the who, what, when, where and how") (quotation omitted). So this claim fails under Rule 9(b). Second, to the

16

extent Migliore identified who requested her signature and failed to provide the document, she pointed to the sales representative. So understood, this claim fails with her agency claims.

**C. Migliore failed to plead that Sunlight Financial and Cross River Bank violated the Fair Credit Reporting Act.**

Migliore also claims Sunlight Financial and Cross River Bank are directly liable for violating the federal Credit Reporting Act. "Congress enacted [it] to 'ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy.'" *Kirtz v. Trans Union LLC*, 46 F.4th 159, 162 (3d Cir. 2022) (quoting *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007)). To those ends, 15 U.S.C. § 1681b(f) prohibits anyone from obtaining or using a credit report unless "the consumer report is obtained for a purpose for which the consumer report is authorized to be furnished under this section." *Gelman v. State Farm Mut. Auto. Ins. Co.*, 583 F.3d 187, 192 n.10 (3d Cir. 2009). Accordingly, to state a § 1681b(f) claim, the plaintiff must plausibly allege "(i) that there was a 'consumer report' within the meaning of the statute; (ii) that the defendant used or obtained it; and (iii) that the defendant did so without a permissible statutory purpose." *Bickley v. Dish Network, LLC*, 751 F.3d 724, 728 (6th Cir. 2014) (quotation and emphasis omitted).

No doubt Migliore plausibly alleged Sunlight Financial and Cross River Bank obtained and used her credit report. The question is whether they accessed her credit report for a permissible purpose.

They did. A creditor is permitted to obtain a consumer's credit report "to use the information in connection with a 'credit transaction involving the consumer.'" *Bibbs v. Trans*

17

*Union LLC*, 43 F.4th 331, 341 n.15 (3d Cir. 2022) (quoting 15 U.S.C. § 1681b(a)(3)(A)). By her own statements, that is what the lenders did: obtain Migliore's credit report and use it "to determine whether she met Defendants' credit requirements" for a 25-year loan of nearly $100,000. App. 91–92, 96–97.

Migliore protests she did not apply for credit; the sales representative applied for credit in her name without her consent. We take that to be true. But it is not pertinent to whether she stated a Credit Reporting Act claim. Section 1681b(f) bars obtaining or using a credit report for an improper purpose, not applying for credit by an improper means or in someone else's name. As the Eleventh Circuit observed in rejecting an identity theft claim like Migliore's, "the [Credit Reporting Act] does not explicitly require a user of consumer reports to confirm beyond doubt the identity of potential consumers before requesting a report." *Domante v. Dish Networks, LLC*, 974 F.3d 1342, 1346 (11th Cir. 2020).

Moreover, unlike other provisions of the Credit Reporting Act, the "credit transaction" provision contains no requirement that it be "initiated by the consumer." *Compare* 15 U.S.C. 1681b(a)(3)(F)(i) (permitting obtaining credit report "in connection with a business transaction . . . *initiated* by the consumer") (emphasis added) *with* 15 U.S.C. § 1681b(a)(3)(A) (permitting obtaining credit report "to use the information in connection with a credit transaction *involving* the consumer") (emphasis added). The Congress that drafted the Credit Reporting Act knew how to limit the permissible grounds for accessing a credit report to consumer-initiated transactions. It did so in the "legitimate business need" provision. It did not in the "credit transaction" provision. That difference suggests there is no requirement Migliore initiated the credit transaction. *Cf. Kelly v. RealPage, Inc.*, 47 F.4th 202, 218–19 (3d Cir.

18

2022) (finding it "telling" that "other sections [of the Credit Reporting Act] specify when the consumer's authorization is needed"). What matters is whether Sunlight Financial and Cross River Bank obtained Migliore's credit report "to use the information in connection with a credit transaction involving the consumer." 15 U.S.C. § 1681b(a)(3)(A). Again, they did.

Migliore protests the lenders did not have a permissible purpose because they were trying to defraud her. This argument relies on the same agency theory addressed above. So it fails for the same reasons. She cannot impute the sales representative's forgery to the lenders.

\* \* \*

Due to a salesman's deception and forgeries, Eva Migliore owed nearly $100,000 for solar panels she did not buy and could not use. Her claims demand sympathy for her and raise rancor toward the perpetrators of this cringeworthy scam. She might have had viable claims against the salesman's company and its CEO. But she abandoned them. Today, we hold the claims she pressed on appeal—against Sunlight Financial and Cross River Bank—are not viable. She has not plausibly alleged the salesman was their agent, so she cannot hold them liable for his misconduct. And she has not plausibly alleged the lenders themselves broke the law. We might wish otherwise, but we must affirm the District Court's dismissal of her claims.